JOHNSON, Respondent, v. McDERMOTT and another, Appellants.

*January 30—February 27, 1968.*

186

For the appellants there was a brief by *Robert I. Perina* and *Jasper, Winner, Perina & Rouse,* all of Madison, and oral argument by *Robert I. Perina.*

For the respondent there was a brief by *J. Richard Long* and *Blakely, Long, Grutzner & Jaeckle,* all of Beloit, attorneys, and *John A. Leifheit* of DeKalb, Illinois, of counsel, and oral argument by *J. Richard Long.*

CONNOR T. HANSEN, J. In this case the initial question to be determined is whether there is any credible evidence to support the finding of the jury that the plaintiff was causally negligent. *St. Clair v. McDonnell* (1966), 32 Wis. 2d 469, 470, 471, 145 N. W. 2d 773.

The defendants premise their contention that there is credible evidence to support the verdict of the jury upon a proposition that might be denominated the "simultaneous skid" theory. This approach to the cause of the accident is enhanced by the testimony of the passenger in defendant's car, Mr. Miller and his wife (occupants of the third or middle car), and Mr. Amos (the driver

of the second car from the front), in that they heard only one crash. The defendants further submit that the fact that plaintiff was not using his windshield wipers and did not have his headlights on constituted acts of negligence which resulted in the plaintiff's failure to see the Miller car until it was too late to stop. Also, that when the plaintiff attempted to stop, due to the wet pavement he skidded into the Miller car at the same time defendant skidded into the rear of plaintiff's car.

Manifestly, the jury was somewhat persuaded by the position taken by the defendant. However, based upon the law of this state relating to rear-end collisions, the testimony and the physical facts, we here determine that the trial judge properly changed the jury's apportionment of negligence.

The proposition that there was but "one crash," which is based upon the testimony of some of the witnesses that they heard but "one crash," is simply not supported by any of the evidence. Four cars were hit in the rear. It is undisputed that the first three had come to a complete stop before the collision between the vehicle of the plaintiff and that of the defendant.

It is established that the testimony of a witness or a finding of a jury, contrary to unquestionable physical situations, or common knowledge, is of no weight in favor of the side it is invoked to support. *Samulski v. Menasha Paper Co.* (1911), 147 Wis. 285, 291, 133 N. W. 142; *Heibel v. Voth* (1955), 271 Wis. 350, 352, 73 N. W. 2d 421.

There is no direct testimony that the plaintiff skidded into the Miller vehicle. The plaintiff testified he stopped approximately 15 feet behind the Miller car. No one testified that the plaintiff had not stopped before the defendant struck him in the rear. The defendant testified he "concluded" that the plaintiff had first struck the Miller vehicle. However, he observed the brake lights on plaintiff's car go on before the impact of the vehicles

of the plaintiff and the defendant. The passenger in the defendant's vehicle noticed the rear end of plaintiff's car go up in the air before the collision between the vehicles driven by plaintiff and defendant. Amos did not know whether or not plaintiff had actually stopped. While watching the traffic through his rearview mirror, he observed, among other things, the plaintiff approaching behind the Miller vehicle and it was "coming at a real slow space [sic]—at a real slow speed, just coming to a halt."

Furthermore, the fact that plaintiff did not have his headlights on is of no significance since the accident occurred at 6:15 p. m. during the daylight-saving-time portion of the year, and the testimony and evidence is that it was daylight. Also there is no testimony that the failure of the plaintiff to have his windshield wipers on prior to the accident impaired his visibility. The rain was described as a drizzle or a sprinkle.

The defendant also submits that the plaintiff was negligent in attempting to stop too quickly and in failing to give any arm signal, secs. 346.34 (2) and 346.35, Stats., thereby creating a hazard to the rear. A driver who gives a signal of stopping by means of brake lights is not required to also give a hand signal. *Thompson v. Nee* (1961), 12 Wis. 2d 326, 328, 107 N. W. 2d 150.

A résumé of the Wisconsin law pertaining to the duty of a driver to keep a lookout to the rear is contained in *Bentzler v. Braun* (1967), 34 Wis. 2d 362, 371–373, 149 N. W. 2d 626.

"In *Statz v. Pohl, Tesch v. Wisconsin Public Service Corp.,* and *Jacobson v. Greyhound Corp.,* this court adhered to the rule applied in *Thoresen v. Grything,* that:

" ' "The driver of the front car owes no duty to the rear or trailing car except to use the road in the usual way, in keeping with the laws of the road, and until he has been made aware of it, by signal or otherwise, he has a right to assume either that there is no other automobile in close proximity to his rear or that, being there, it is un-

der such control as not to interfere with his free use of the road in front of and to the side of him in any lawful manner." 5 Am. Jur., Automobiles, p. 656, sec. 280.'

"In *Grything, supra,* both parties had a clear view of a parked car ahead on the roadway, and though Grything made no observation to the rear, he applied his brakes, which activated the rear warning lights. He slowed down abruptly because he anticipated an invasion of the road by a person getting out of the parked car near Grything's lane of traffic. In *Tesch, supra,* the driver, Lepak, slammed on his brakes when he anticipated that an automobile might invade his lane. In that case, *supra,* page 137, we referred to the rule set forth in *Wodill v. Sullivan:*

" 'When a vehicle is equipped with brake-activated stop lights as required by statute, as soon as pressure is applied to the brakes, a signal automatically occurs indicating the driver's intention to stop or diminish speed. No other signal is required by law.'

"In *Tesch,* Lepak applied his brakes. In *Statz,* the child of the operator fell out of the rear door and he was obliged to abruptly apply his brakes. In *Jacobson,* we pointed out that an operator's exemption from a rear-view lookout was not absolute:

" '. . . a driver ordinarily has no duty of maintaining a lookout to the rear unless a deviation from his course of travel or his position on the highway could reasonably create or constitute a hazard to drivers approaching from the rear.'

"In *Mack v. Decker* we stated:

" '. . . there was no requirement that Taft exercise lookout to the rear before stopping where the application of his car brakes activated the red car taillights.'

"The same point was at issue in the very recent case of *St. Clair v. McDonnell,* wherein we held there was no duty of lookout to the rear when the brake lights 'must have been activated.' "

The plaintiff activated his brakes in order to stop behind the Miller car. Under the circumstances of this case, the responsibility as to lookout was to his front, rather than to the rear. It is undisputed that the brake lights on plaintiff's car went on before the collision and

that the defendant saw them go on. Furthermore, both the plaintiff and defendant admittedly were aware of the backup of traffic for a considerable distance before they arrived at the intersection.

A jury should not be permitted to speculate that it was not reasonable conduct for one in the plaintiff's position to stop under such circumstances. The defendant failed to stop in time, either because he was following too closely or because he was going too fast under the existing conditions of the highway and the traffic.

The defendants also raise an issue as to the procedure followed after the jury returned its verdict.

Immediately after the jury had returned its verdict, the court entered judgment upon the verdict and advised counsel for both plaintiff and defendant that in doing so it would be subject to motions by either party.

The plaintiff subsequently moved the court to change the answers in the verdict on negligence and causation as to the plaintiff from "Yes" to "No," and the answer on the comparison question as to the plaintiff from 35 percent to zero percent and as to the defendant from 65 percent to 100 percent. The court granted the motion of the plaintiff.

The defendant argues that the plaintiff waived his right to so move since he failed to vacate or reopen the judgment which had been entered upon the verdict immediately after it was returned. At the time the trial court entered judgment on the verdict, the record clearly discloses both parties understood that either or both of them could file motions if they so desired. A reference was made to the practice of federal courts which permit the immediate entry of judgment upon the verdict.[1]

---

[1] Fed. Rules Civ. Proc., rule 58 (28 USCA). **Entry of judgment**

"Subject to the provisions of Rule 54 (b): (1) upon a general verdict of a jury, or upon a decision by the court that a party shall recover only a sum certain or costs or that all relief shall

Obviously, we would not be confronted with this issue had the Wisconsin procedure been followed.

However, sec. 269.46, Stats., provides as follows:

"**269.46 Relief from judgments, orders and stipulations; review of judgments and orders.**

" . . .

"(3) All judgments and court orders may be reviewed by the court at any time within 60 days from service of notice of entry thereof, but not later than 60 days after the end of the term of entry thereof."

While *Fringer v. Venema* (1965), 26 Wis. 2d 366, 375, 376, 132 N. W. 2d 565, 133 N. W. 2d 809, concerned a trial to the court and the issue was that of a trial court reviewing its own findings of fact, it is somewhat analogous to the instant situation.

In *Fringer, supra,* this court referred to sec. 269.46 (3), Stats., by stating:

"We deem this statute sufficiently broad to allow a motion to review the findings of fact entered by the trial court and commend its use to afford the trial court an opportunity to correct its findings of fact, conclusions of law, and judgment, or award a new trial in appropriate instances. Counsel has not cited a Wisconsin case, nor have we found one, requiring that a motion to review be brought in the trial court as a prerequisite to a consideration of the alleged error on appeal in a nonjury

be denied, the clerk, unless the court otherwise orders, shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the court; (2) upon a decision by the court granting other relief, or upon a special verdict or a general verdict accompanied by answers to interrogatories, the court shall promptly approve the form of the judgment, and the clerk shall thereupon enter it. Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79 (a). Entry of the judgment shall not be delayed for the taxing of costs. Attorneys shall not submit forms of judgment except upon direction of the court, and these directions shall not be given as a matter of course."

case. While we approve and commend the practice, we do not at this time declare it to be mandatory but reserve this question for subsequent opinion or court rule."

In this particular case the intention of the trial court was evident to both parties, and its procedure was consistent. The plaintiff did not waive his right to have the court entertain his motions after judgment had been entered on the verdict.

*By the Court.*—Judgment affirmed.